<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TEAMSTERS LOCAL UNION NO. 469, et al., | |
| *Plaintiffs,* | Civil Action No. 14-7466 (MCA) |
| v. | |
| TEAMSTERS JOINT COUNCIL NO. 73 PENSION FUND, et al., | OPINION |
| *Defendants.* | |

ARLEO, UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter comes before the Court by way of Defendants Teamsters Joint Council No. 73 ("Joint Council"), Teamsters Joint Council No. 73 Pension Fund (the "Fund"), and the Fund's Board of Trustees' ("Trustees") (collectively, "Defendants") motion to dismiss Plaintiffs Teamsters Local Union No. 469 ("Local 469"), Fredrick P. Potter, Jr., Michael L. Broderick, And Michael Tkatch's ("Individual Plaintiffs") (collectively, "Plaintiffs") Amended Complaint for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), and failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6) [Dkt. No. 11]. For the reasons set forth below, the motion is **GRANTED**.

## II. FACTS

Plaintiff Local 469 is an unincorporated labor organization. Am. Compl., Dkt. No. 10, at 1 ¶ 15. The Individual Plaintiffs are all members of Local 469's executive board: Mr. Potter is

1

President, Mr. Broderick is Secretary-Treasurer, and Mr. Tkatch is Vice President.  Id. at ¶¶ 2-4.  Local 469 is an affiliate organization of the International Brotherhood of Teamsters ("IBT") and a member of Joint Council No. 73, a subordinate body of the IBT.  Id. at 2-3 ¶¶ 1, 3.  The IBT's Constitution sets out the parameters of the relationship between the Joint Council and its Local Unions and provides for dispute resolution mechanisms.  Id. at 11-12 ¶ 43.  Until recently, Local 469 was also a contributor to the Teamsters Joint Council No. 73 Pension Fund (the "Fund").

The Fund is a multi-employer, defined benefit pension plan that is subject to the Employee Retirement Income Security Program ("ERISA"), 29 U.S.C. § 1001 et seq.  Id. at 3 ¶ 3.  It is administered by a Board of Trustees, who are also the members of the Joint Council's executive board.  Id.  The Trustees are fiduciaries of the Fund, its assets, and its participants.  Id. at 13 ¶ 52.

In or about 1971, the Joint Council's Executive Board created the Fund as a separate legal entity from both the Joint Council and the IBT and determined that the Fund would be governed by the Joint Council No. 73 Pension Trust Agreement ("Trust Agreement" or "Agreement").  Id. at 4 ¶¶ 6-9, 12.  In the event an affiliate owed money to the Fund, Section 13 of the Trust Agreement permitted the Trustees to "take such steps including, but without limitation to, the institution of . . . . any proceeding at law, in equity or in bankruptcy or arbitration, as may be necessary for the collection of Council and Affiliate contributions . . . ."  Certification of Genevieve M. Murphy-Bradacs ("Murphy-Bradacs Cert."), Ex. A, Trust Agreement, Dkt. No. 11 (emphasis added).  The Agreement also permits the Trustees to amend any section at any time.  Id. §§ 10, 12.

After its creation, the Fund solicited the Joint Council's Local Union members to contribute to the Fund on behalf of their full-time employees.  Am. Compl. 5 ¶ 13.  Local 469 became a contributor to the Fund in 1971, but other members of the Joint Council chose not to join.  Id. at 4-5 ¶¶ 6, 14.  When contributing Unions ceased making contributions to the Fund, the Fund never

2

took direct action against them. Id. at 5 ¶¶ 15-16. In such cases, the Fund attempted to hold the IBT liable for unpaid contributions, but the IBT refused to repay any debts. Id. at 5-6 ¶ 16. When Local 469 became a contributor to the Fund, neither it nor anyone on its behalf signed an agreement with the Fund that prohibited Local 469 from unilaterally stopping its contribution payments to the Fund. Id. at 6 ¶ 17.

Around September 14, 2009, the Fund notified all contributing Local Unions and all participants that it was terminating accrual of additional pension credits for all Fund participants.[1] Id. at 7 ¶ 22; Certification of Basil Castrovinci ("Castrovinci Cert."), Exs. 1, 2, Benefits Memoranda, Dkt. No. 11. Contributors, however, had to continue paying into the Fund. Am. Compl. at 7 ¶ 22. As a result, the Individual Plaintiffs, all of whom are participants in the Fund, would not receive any new accrual of pension benefits. Am. Compl. at 7 ¶ 22. Local 469 continued to pay into the Fund until it gave written notice on December 19, 2013, that, effective December 31, 2013, it would no longer make contributions to the Fund on behalf of anyone. Id. at 7-8 ¶ 24. Local 469 has not made any contributions to the Fund since the end of 2013. Id. at ¶ 25.

In May 2014, the Fund's Trustees agreed to amend the language of the Trust Agreement's arbitration clause. Specifically, the Trustees amended Section 13 to permit the Trustees to designate a permanent arbitrator to hear all proceedings instituted for the collection of delinquent contributions. Id. at 9 ¶ 31; Murphy-Bradacs Cert., Ex. A. On June 23, 2014, the Fund notified Local 469 of its intention to initiate an arbitration hearing before the Fund's permanent arbitrator in order to obtain an award that would require Local 469 to pay delinquent contributions owed since January 2014. Am. Compl. at 9 ¶ 34.

---

[1] The actual letter is dated September 2009, but Plaintiffs allege they received it in 2008 (an interesting point considering their claims face statute of limitations issues). Castrovinci Cert., Exs. 1, 2; Am. Compl. at 7 ¶ 22. The Court will consider the date on the letter to be correct.

3

On January 31, 2015, Plaintiffs filed the instant Amended Complaint. In Count I, Plaintiffs seek declaratory and injunctive relief against the Fund. In Count II, Plaintiffs seek declaratory and injunctive relief against the Joint Council. In Count III, the Individual Plaintiffs claim breach of fiduciary duty on the part of the Trustees. On February 13, 2015, Defendants moved to dismiss these counts for lack of subject matter jurisdiction and for failure to state a claim. Because Plaintiffs have failed to plead adequate facts to state a claim under any of these causes of action, the Court dismisses Plaintiff's Amended Complaint pending the outcome of the arbitration.

### III. STANDARD OF REVIEW

In considering Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction, the party invoking federal jurisdiction bears the burden of proving that subject matter jurisdiction exists. See, e.g., Mortensen v. First Fed. Sav. & Loan Ass'n., 549 F.2d 884, 891 (3d Cir. 1977). A motion to dismiss for lack of subject matter jurisdiction may either "attack the complaint on its face" or "attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." Id. Where, as here, the Court evaluates the merits of a facial attack, "the court must consider the allegations of the complaint as true." Id.

When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). Dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Id. The facts alleged, however, must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. Accordingly, a complaint will survive a motion to dismiss if it provides a

4

sufficient factual basis such that it states a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). However, "a document integral to or explicitly relied on in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotation marks omitted and alteration in the original).[2]

## IV. ANALYSIS

### A. Defendant's Motion to Dismiss For Lack of Subject Matter Jurisdiction

Defendants move to dismiss the Amended Complaint based on the Court's lack of subject matter jurisdiction. Plaintiffs assert two possible bases for subject matter jurisdiction: Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and Section 502 of ERISA, 29 U.S.C. § 1132(a)(1)(B) and (a)(3).[3] Am. Compl. at 3 ¶ 4.

#### 1. Subject Matter Jurisdiction under ERISA

Under ERISA, Plaintiffs assert that Subsections 1132(a)(1)(B) and (a)(3) confer jurisdiction. These subsections permit Federal courts to hear civil actions (1) brought "by a participant or beneficiary to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the

---

[2] Plaintiffs' Amended Complaint make frequent reference to three integral documents that they did not attach: the Trust Agreement and amendment, the IBT Constitution, and the Fund's benefits suspension memoranda. Defendants have attached the documents to certifications in their briefs, and Plaintiffs cite to these certifications in their Opposition. Opp'n. Br. at 2, 3. The Court may consider the documents on a motion to dismiss because they are "integral to or explicitly relied on in the complaint." In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426.

[3] Plaintiffs cite to 29 U.S.C. § 1132[a][1][B][3], which does not exist in the statute. A fair reading of their complaint suggests Plaintiffs intended to cite §§ 1132(a)(1)(B) and (a)(3).

5

plan," 29 U.S.C. § 1132(a)(1)(B) (emphasis added); or (2) brought "by a <u>participant</u>, <u>beneficiary</u>, or <u>fiduciary</u> to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or to obtain other appropriate equitable relief," 29 U.S.C. § 1132(a)(3) (emphasis added).

Defendants argue that the Court does not have jurisdiction because Local 469 is not a "participant," "beneficiary," or "fiduciary," and because the individual Plaintiffs' claims do not seek redress for an ERISA violation or enforce rights under an ERISA plan. Defs.' Br. at 19. The Court disagrees.

Defendants are correct that Local 469 does not fall under either jurisdictional hook. ERISA defines "participants" as employees or former employees who are, or may be, eligible to receive benefits, 29 U.S.C. § 1002(7), and "beneficiaries" as people designated by a participant who may become eligible to receive benefits. 29 U.S.C. § 1002(8); <u>see</u> <u>New Jersey State AFL-CIO v. State of N.J.</u>, 747 F.2d 891, 892-93 (3d Cir. 1984). "Fiduciaries" are those who "exercise[] any discretionary authority or discretionary control respecting management" of a plan or "ha[ve] any discretionary authority or discretionary responsibility in the administration" of a plan. <u>Varity Corp. v. Howe</u>, 516 U.S. 489, 498 (1996); 29 U.S.C. § 2002(21)(A). "It is clear from the statute that labor unions are neither participants nor beneficiaries." <u>New Jersey State AFL-CIO</u>, 747 F.2d at 893. Labor unions cannot be fiduciaries when they do not have or exercise any authority or control over a benefit plan. <u>See</u> <u>Pegram v. Herdrich</u>, 530 U.S. 211, 222 (2000) ("A fiduciary within the meaning of ERISA must be someone acting in the capacity of manager, administrator, or financial adviser to a "plan" . . . ."); <u>cf.</u> <u>Bouboulis v. Transp. Workers Union of Am.</u>, 442 F.3d 55, 65 (2d Cir. 2006) (finding labor union a fiduciary where union was listed as plan administrator who had discretionary authority over plan).

6

Here, Local 469, a labor organization, is neither a participant nor beneficiary. It is also not a fiduciary given the lack of any allegation in the Amended Complaint that it exercises or has any authority or control over the Fund. The Court therefore does not have subject matter jurisdiction to the extent that the claims are brought by Local 469.

ERISA, however, does grant this Court jurisdiction over the claims to the extent they are raised by the Individual Plaintiffs. First, the Individual Plaintiffs qualify as participants in the Fund in that they are eligible to receive pension benefits. Am. Compl. at 2 ¶¶ 2-4. Defendants do not contest this. Second, contrary to Defendants' contention, the Individual Plaintiffs' claims do seek to enforce their rights under an ERISA plan. The Fund is subject to ERISA as a multi-employer pension plan. Id. at 4 ¶ 11. The Individual Plaintiffs claims in Counts I and II seek equitable relief to address alleged violations of the terms of the pension plan. See 29 U.S.C. § 1132(a)(3). That is, they request an injunction and declaratory judgment that the Fund cannot require a permanent arbitrator to arbitrate a disagreement over unpaid pension contributions. Am. Compl. 11 ¶¶ a-c, 13 ¶¶ a-c. In Count III, the Individual Plaintiffs seek "to recover benefits due [them] under the terms of [their] plan" because they allege that they are entitled to recover pension credits due to them under the terms of the Fund's Trust Agreement. Id. at 14-15 ¶ 55; see 29 U.S.C. § 1132(a)(1)(B). The Individual Plaintiffs therefore seek to enforce their rights as participants in an ERISA plan, and the Court, in turn, has subject matter jurisdiction over all of their claims.

### 2. Subject Matter Jurisdiction under the LMRA

Because the Court holds that it does not have jurisdiction over Local 469's claims under ERISA, the Court must next determine if it has jurisdiction over Local 469's claims under the

LMRA.  Section 301 of the LMRA provides federal district courts with jurisdiction to hear "[s]uits for violation of contracts between . . . labor organizations."  29 U.S.C. § 185(a).

The Court does not have jurisdiction over Local 469's claims because neither the Fund nor the Joint Council fit the statutory definition of a "labor organization."  See 29 U.S.C. § 152(5) (defining it as "any organization of any kind . . . which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.").  Plaintiffs plead that "[t]he Teamsters Joint Council No. 73 Pension Fund is not a labor organization."  Am. Compl. at 4 ¶ 8.  Plaintiffs likewise allege that Joint Council does not interact with employers. Id. at 3 ¶ 3 ("The Joint Council does not represent any employees for the purpose of collective bargaining nor is it a party to any collective bargaining agreements.  Its membership consists of Local Unions affiliated with the IBT"); see also Grant v. Burlington Indus., 627 F. Supp. 311, 313 (N.D. Ill. 1985) (finding Joint Council not a labor organization where local unions, not employees, participate and it does not represent employees for purposes of collective bargaining).  The Court therefore does not have jurisdiction over Local 469's claims.

### B.  Defendants' Motion to Dismiss For Failure to State a Claim

#### 1. Declaratory and Injunctive Relief (Counts I & II)

Defendants seek to dismiss Count I on the ground that Plaintiffs are subject to a compulsory arbitration agreement.  First, Defendants argue that Local 469 agreed to arbitrate the Fund's claims for delinquent payments.  Second, Defendants argue Local 469 is required to appear before the permanent arbitrator.  The Court agrees.

Plaintiffs concede that Local 469 has agreed to arbitrate contribution issues with the Fund.  Opp'n Br. at 14 ("The Pension Fund can invoke arbitration over the issue of whether or not Local

469 can be required to contribute to the Pension Fund beyond the date of the Local's notice of termination."). Therefore, the only issue under Count I is whether Local 469 must appear before the permanent arbitrator.

Because the Trust Agreement designates that New Jersey law controls its interpretation, the Court will apply the laws of this state to the issues. See Cohen v. Independence Blue Cross, 820 F. Supp. 2d 594, 601-03 (D.N.J. 2011) (giving effect to ERISA plan's choice-of-law provision); see also Gay v. CreditInform, 511 F.3d 369, 389 (3d Cir. 2007) ("Courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them."); Security Sav. Bank v. Green Tree Acceptance, Inc., 703 F.Supp. 350, 354 (D.N.J. 1989) ("New Jersey conflict of laws principles clearly recognize the validity and enforceability of choice-of-law provisions in contracts . . . ."); Wang Labs., Inc. v. Kagan, 990 F.2d 1126, 1128-29 (9th Cir. 1993) ("Where a choice of law is made by an ERISA contract, it should be followed, if not unreasonable or fundamentally unfair.").

As an initial matter, Defendants incorrectly assert that an arbitrator, not the Court, should decide whether the permanent arbitrator clause is valid. Specifically, Defendants argue that Plaintiffs challenge the validity of the Trust Agreement as a whole, which, they assert, is an issue the arbitrator must decide. Defs.' Reply Br. 5 at (citing New Jersey Bldg. Laborers' Statewide Ben. Funds v. Newark Bd. of Educ., No. 12-7665, 2013 WL 5180433, at *3 (D.N.J. Sept. 13, 2013)). That is not correct. The Individual Plaintiffs only challenge the validity of the amended arbitration clause; they do not claim that the entire contract is invalid. See New Jersey Bldg. Laborers Statewide Benefits Fund v. Am. Coring & Supply, 341 F. App'x 816, 820 (3d Cir. 2009) (requiring arbitration for disputes attacking entire agreement but not for disputes attacking specific arbitration provision). This is an issue for the Court to decide.

The crux of the issue is whether the permanent arbitrator clause, created pursuant to the Agreement's right-to-amend provisions, is valid. Under New Jersey law, an amendment to a term in a contract that contains a right-to-amend clause may be enforceable, particularly where the reserved right is unfettered. See Evo v. Jomac, Inc., 119 N.J. Super. 7, 17 (Ch. Div. 1972); Dolan v. Heller Bros. Co., 30 N.J. Super. 440, 445 (Ch. Div. 1954) (noting validity of clause granting right to amend). Valid exercise of the right to amend, however, cannot impair or destroy the contract or the parties' basic rights. See Lambert v. Fishermen's Dock Co-op., Inc., 61 N.J. 596, 600 (1972). In making its determination, the Court must analyze "[t]he particular language of the arbitration clause and its relationship to other contract provisions . . . ." Commercial Realty Enters., L.L.C. v. Staples The Office Superstore E., Inc., No. A-3964-04T5, 2006 WL 290316, at *5 (N.J. Super. Ct. App. Div. Feb. 8, 2006).

The Court finds that the amendment to include a standing arbitrator is valid because the Trustees' ability to use a standing arbitrator was contemplated by the original terms of the Trust Agreement. Section 13 of the Agreement permits the Fund to institute arbitration to collect outstanding contributions from Affiliates. The Section does not prohibit the Fund from using a specific arbitrator. Rather, it leaves open that possibility by stating that the methods listed are non-exhaustive and appropriate means may be employed as necessary "to protect the Fund against accumulations of delinquencies or arrearages in Plan contributions." Murphy-Bradacs Cert., Ex. A, Trust Agreement at Sec. 13. As such, when the Trustees invoked their Section 13 power to amend the arbitration provision, they were expressly stating what the original wording already implied—i.e., the Fund can require a standing arbitrator as a necessary means to protect the Fund against outstanding contributions. The amendment was therefore consistent with Local 469's basic rights. The Individual Plaintiffs do not offer any support for the proposition that the arbitration

10

clause's terms are not to be amended in a way that is consistent with the underlying Agreement. Accordingly, the claims in Count 1 asserted by the Individual Plaintiffs are dismissed pending resolution through arbitration.

Defendants argue Count II must be dismissed because Plaintiffs did not exhaust certain internal administrative remedies contained in the IBT Constitution. The Court agrees.

Parties alleging ERISA violations are required to exhaust their internal administrative remedies before seeking judicial relief, unless resort to the administrative process would be futile. Berger v. Edgewater Steel Co., 911 F.2d 911, 916 (3d Cir. 1990); Harrow v. Prudential Ins. Co. of Am., 76 F. Supp. 2d 558, 561 (D.N.J. 1999) aff'd, 279 F.3d 244 (3d Cir. 2002); see also Regional Emp'ers.' Assurance Leagues Voluntary Emps.' Beneficiary Ass'n v. Sidney Charles Mkts., Inc., No. 01-cv-4693, 2003 WL 220181, at *3 (E.D. Pa. Jan. 29, 2003) (dismissing ERISA claims under Rule 12(b)(6) for failure to exhaust administrative remedies).

Plaintiffs were required, but failed, to exhaust their internal administrative remedies before requesting relief against the Joint Council. Unlike the claim in Count I between Local 469 and the Fund, which is governed by the Trust Agreement, the claim in Count II is between Local 469 and the Joint Council and is governed by the IBT Constitution. The IBT Constitution's administrative procedures require Local 469 to file in writing its claims against the Joint Council, after which a trial before the General Executive Board would occur. Murphy-Bradacs Cert., Ex. B, IBT Constitution, Art. XIX, Sec. 4. The Amended Complaint does not include any assertions that these procedures were followed or even attempted. Plaintiffs brief does not discuss the issue at all. Absent a single fact suggesting Local 469 resorted to these administrative remedies, or suggesting that doing so would be futile, the Individual Plaintiffs have not met the exhaustion requirement. Count II is dismissed.

**2. Breach of Fiduciary Duty (Count III)**

In Count III, the Individual Plaintiffs allege that the Fund's Trustees breached their fiduciary duty by terminating the Fund's accrual of future benefits. They demand that the Trustees compensate them for actual lost pension accruals. Defendants argue that the claim is barred by ERISA's three year statute of limitations.[4] The Court agrees.

The expiration of the statute of limitations may provide a basis for dismissal on a Rule 12(b)(6) motion in those situations where the defense is "apparent on the face of the complaint." Benak v. Alliance Capital Mgmt. L.P., 435 F.3d 396, 400 n.14 (3d Cir. 2006); Robinson v. Johnson, 313 F.3d 128, 135 (3rd Cir. 2002) (limitations defense may be raised on a motion under Rule 12(b)(6) "if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations") (internal citations and quotations omitted).

Section 413 of ERISA, 29 U.S.C. § 1113, fixes the period within which fiduciaries to an employee benefit plan may be sued for breach of their responsibilities. The limitation period is the shorter of (1) six years from either (a) the date of the last action constituting a part of the breach or (b) in the case of omission, the latest date the fiduciary could have cured the breach; or (2) three years from the date the plaintiff first gains "actual knowledge" of the breach. 29 U.S.C. § 1113(1), (2). Defendants point to subsection (2) and assert that the Individual Plaintiffs had actual knowledge since September 14, 2009, when the Fund Trustees advised all local unions

---

[4] The Court need not determine the applicable statute of limitations under the LMRA because Count III does not fall within the LMRA's ambit. As explained above, the LMRA only grants Federal District Courts subject matter jurisdiction over violation of contract claims between labor organizations. See 29 U.S.C. § 185(a). Neither the Individual Plaintiffs nor the Fund or its Trustees fall under the statutory definition of "labor organization." See 29 U.S.C. § 152(5) (defining it as "any organization of any kind . . . which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."). The Count III claim therefore does not fall under the LMRA or its statute of limitations provisions.

participating in the plan that the benefit accruals would be suspended. Defs.' Br. at 23-24. Plaintiffs do not address this or any statute of limitations issue in their brief. They filed their initial Complaint on December 2, 2014 and their Amended Complaint on January 31, 2015. Compl., Dkt. No. 1; Am. Compl., Dkt. No. 10.

The Third Circuit has adopted a two-part test to determine when a plaintiff has acquired "actual knowledge" to trigger the three-year statute of limitations. First, the plaintiff must have actually known of "the events that occurred which constitute the breach or violation." Richard B. Roush, Inc. Profit Sharing Plan v. New Eng. Mut. Life Ins. Co., 311 F.3d 581, 586 (3d Cir. 2002). Second, plaintiff must have actually known that "those events supported a claim of breach of fiduciary duty or violation under ERISA." Id.; see also Montrose Med. Group Participating Sav. Plan v. Bulger, 243 F.3d 773 (3d Cir. 2001).

Here, the Individual Plaintiffs had actual knowledge of the events which they claim constituted a breach—i.e., termination of the benefits because of mismanagement—and knew that those events supported a claim of breach of fiduciary duty as early as 2009. They knew about the benefit suspension when the Fund Trustees notified all active participants, including the Individual Plaintiffs, on September 14, 2009. Am. Compl. at 7 ¶ 22; Castrovinci Cert., Ex. 2; see Kurz v. Philadelphia Elec. Co., 96 F.3d 1544, 1551 (3d Cir. 1996) (finding actual knowledge on date when employer openly announced pension plan changes that allegedly constituted breach). They were also notified that the suspension was the result of management decisions, in that the Fund's assets were "ero[ded]" and it was suffering from poor investments. Castrovinci Cert., Ex. 2. Moreover, the Amended Complaint maintains that, since the Fund's inception in 1971, several members of the Joint Council chose not to participate. The Individual Plaintiffs, all of whom are executives of Local 469, do not allege that this information, which had been evident for over forty years, was

13

unknown to them in 2009 or otherwise hidden. Nor does the Amended Complaint mention any post-2009 changes to the plan that would further inform their claim. Am. Compl. 5 ¶ 13-14.

The claim does not state "a technical violation of ERISA" or allege a "cleverly concealed plan amendment." See Kurz, 96 F.3d at 1551. After September 2009, there was simply "nothing left for them to discover and nothing more for them to do but to file suit or to seek legal counsel." Connell v. Trs. of the Pension Fund of the Ironworkers Dist. Council of N. N.J., 118 F.3d 154, 158 (3d Cir. 1997) (finding Plaintiffs had "actual knowledge of all of the material elements of the violation . . . including knowledge of the harmful consequences flowing from the cancellation of [pension] credits"). Because Plaintiffs' action was filed more than three years after 2009, it is time-barred. Count III is dismissed.

I. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**, and the case is administratively dismissed pending the outcome of the arbitration. An appropriate Order accompanies this Opinion.

Date: September 22, 2015  /s/ *Madeline Cox Arleo*
　　　　　　　　　　　　　　　　　　　　　Hon. Madeline Cox Arleo
　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE